UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | CASE NO: |
| **KAY MYLES** | **06-11116** |
| DEBTOR | CHAPTER 13 |
| | |
| **KAY MYLES AND** | ADV. NO: |
| **VANESSA P. GHORAM,** | |
| **INDIVIDUALLY AND ON BEHALF** | **07-1148** |
| **OF ALL OTHER SIMILARLY SITUATED** | |
| **MORTGAGORS OF WELLS FARGO** | |
| **BANK, N.A. F/K/A WELLS FARGO** | |
| **HOME MORTGAGE, INC.** | |
| PLAINTIFFS | |
| V. | |
| **WELLS FARGO BANK, N.A.** | |
| **F/K/A WELLS FARGO HOME MORTGAGE, INC.** | |
| DEFENDANT | |

**MEMORANDUM OPINION**

Kay Myles and Vanessa Ghoram sued Wells Fargo Bank. N.A. ("Wells Fargo") on behalf of themselves and others similarly situated for alleged misconduct during the plaintiffs' chapter 13 bankruptcy cases.[1] Specifically, the amended complaint asserts state law claims for breach of contract and unjust enrichment; damages for violations of 11 U.S.C. §362; restitution for violating 11 U.S.C. §§362, 506, 1322, 1327 and Fed. R. Bankr.

---

[1] Amended Class Action Complaint (P-50). The plaintiffs filed their class action in the United States District Court for the Middle District of Louisiana on September 27, 2007, where it was assigned civil action 07-00698. At Wells Fargo's request, the district court referred the case to this court, and Myles and Ghoram later moved to withdraw the reference of the lawsuit for a jury trial. The district court has not yet disposed of the plaintiffs' motion. Because the court has not certified a class, this opinion refers only to the named plaintiffs' claims.

P. 2016; injunctive relief; and attorneys' fees and costs. Wells Fargo's answer urges several affirmative defenses. The defendant also moved for judgment on the pleadings. Wells Fargo's motion is granted in part.[2]

## The Amended Complaint

Myles and Ghoram filed chapter 13 cases on December 5, 2006 and February 16, 2007, respectively.[3] The court confirmed Myles's chapter 13 plan on March 12, 2007 and Ghoram's on May 9, 2007. The plans required the chapter 13 trustee to make monthly payments to Wells Fargo on the plaintiffs' pre-petition mortgage arrearages reflected in the proofs of claim Wells Fargo filed in their bankruptcy cases.[4] The plans also required the debtors to make their post-petition monthly mortgage payments directly to Wells Fargo.

The amended complaint alleges that Wells Fargo did not comply with the terms of the confirmed plans. It alleges that Wells Fargo: (1) continued to treat the plaintiffs' mortgage debt as if the debtors were in default, rather than current as of the petition dates; (2) instead of applying plaintiffs' direct monthly payments as though the mortgage debt was current, applied the payments to charges improperly generated as a result of treating the mortgage debt as though it were still in default; to the arrearages; to charges on the arrearages; and to interest on the arrearages; (3) deposited the plaintiffs' direct monthly payments on the current mortgage debt into a suspense account and did not apply them to the post-petition mortgage debt because it wrongly concluded that they were inadequate to satisfy the current monthly obligation; and (4) failed to disclose to the plaintiffs that their

---

[2] Wells Fargo moved to dismiss the original complaint under Fed. Rule Civ. P. 12(b)(1) and (6). At the hearing on that motion, Wells Fargo's counsel advised the court that its motion was moot because plaintiffs had filed an amended complaint. The court denied that motion as moot on May 1, 2008 (P-80).

[3] Vanessa Ghoram's case number is 07-10179.

[4] The arrearages comprise principal and interest, advances, fees and other charges that accrued before the debtors filed bankruptcy.

2

mortgages were being treated as though they were in default, and that additional interest, fees and other charges were accruing due to Wells Fargo's method of applying post-petition payments.

Plaintiffs claim that Wells Fargo's actions breached the provisions of both their mortgages and confirmed chapter 13 plans; triggered improper fees, charges and interest that unjustly enriched Wells Fargo; violated the automatic stay; and violated Bankruptcy Code section 506(b) and Fed. R. Bankr. P. Rule 2106.  Myles and Ghoram pray for damages and restitution under state law and also under 11 U.S.C. §§105, 362, 506, 1322, 1327 and Rule 2016.

### The Motion for Judgment on the Pleadings

Wells Fargo moved to dismiss the amended complaint for failing to state a claim.  It argues that: (1) plaintiff Myles's suit is barred because she did not give Wells Fargo notice and an opportunity to cure the alleged breaches before filing suit, as her mortgage required; (2) the plaintiffs' remedy for Wells Fargo's acts lies solely under 11 U.S.C. §524(i), which applies only after chapter 13 debtors receive a discharge;[5] (3) the amended complaint does not demonstrate that Wells Fargo's actions enriched it; (4) the defendant's acts did not violate the automatic stay; (5) Bankruptcy Code section 506(b) does not apply after confirmation of a chapter 13 plan; and finally, (6) plaintiffs have no private right of action for damages under 11 U.S.C §§105, 506, 1322 and 1327, or under Fed. R. Bankr. P. Rule 2016.[6]

---

[5] Chapter 13 debtors receive a discharge only after completing all their plan payments.  11 U.S.C. §1328(a). Because neither named plaintiff has completed the plan payments – Myles has a 56 month plan and Ghoram a 31 month – they are not yet entitled to a discharge.

[6] Wells Fargo argued in its motion to dismiss (since withdrawn) that plaintiffs have no private right of action for violations of section 362.  Its motion for judgment on the pleadings wisely abandoned this argument. *See Pettit v. Baker*, 876 F.2d 456, 457-58 (5th Cir. 1989), holding that Congress indeed created a private right of action

3

Motions for judgment on the pleadings under Fed. R. Bankr. P. 7012(c) (adopting Fed. R. Civ. P. 12(c)) enable courts to dispose of cases "where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002), quoting *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990). On a motion for judgment on the pleadings, the court should construe the pleadings liberally in the light most favorable to the plaintiff, and accept as true all well-pled facts. A court should not dismiss the case unless the plaintiff cannot prove any set of facts entitling it to relief. *Great Plains* at 312-13 (citations omitted). The difference between a Rule 12(b)(6) motion and a Rule 12(c) motion is that a court ruling on a motion under Rule 12(c) *may* properly consider documents and facts outside the pleadings, if they can be the subject of judicial notice. *Id.* at 313-14.

Wells Fargo asked the court to take judicial notice of documents outside the pleadings. Although it is not clear that the provisions of all documents filed in a case, as opposed to the fact of filing, are appropriate subjects for judicial notice,[7] the court has considered Exhibits A, B, C, and D[8] attached to Wells Fargo's memorandum in ruling on the motion for judgment on the pleadings.

---

for willful violation of the automatic stay when it enacted 11 U.S.C. §362(h) (since redesignated as 11 U.S.C. §362(k)).

[7] Federal Rule of Evidence 201 provides that a judicially noted fact is one that cannot be "subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

[8] Exhibits A and B comprise documents including promissory notes and mortgages that evidence Myles's and Ghoram's debts to Wells Fargo. Exhibits C and D are Myles's and Ghoram's chapter 13 plans and the orders confirming them.

### 1. *Notice and Opportunity to Cure*

Covenant 20 of the Myles mortgage[9] provides:

> Neither Borrower [Myles] nor Lender [Wells Fargo] may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other parties' actions pursuant to this Security Instrument, or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.

Defendant argues that this provision is a suspensive condition, or condition precedent,[10] and that because Myles did not give Wells Fargo notice of its alleged breaches and an opportunity to cure them, Myles cannot sue for breach of the mortgage or the plan.[11]

Even assuming covenant 20 is a suspensive condition or a condition precedent that Myles has not satisfied, Wells Fargo has waived the defense by not preserving it in its answer.

Failure to perform a condition precedent is an affirmative defense. *See Fuller v. State Farm Mutual Auto Ins. Co.*, 971 F.Supp. 1098, 1100 (N.D. Tex. 1997), citing *Texas Dept. of Housing and Community Affairs v. Verex Assurance, Inc.*, 68 F.3d 922, 928 (5th

---

[9] The Ghoram mortgage does not include a comparable provision.

[10] A suspensive condition is the civil law analog of a condition precedent. La. Civ. Code. art. 1767. "A conditional obligation is one dependent upon an uncertain event. If the obligation may not be enforced until the uncertain event occurs, the condition is suspensive."

[11] A confirmed reorganization plan has the attributes of a contract and should be construed as one. *See In re Stratford of Texas, Inc.*, 635 F.2d 365, 368 (5th Cir. 1981).

5

Cir. 1995).[12] Failure to assert an affirmative defense in a responsive pleading waives the defense. Fed. R. Civ. P. 8(c) (adopted by Fed. R. Bankr. P. 7008); *Jones v. Miles*, 656 F.2d 103, 107 n.7 (5th Cir. 1981), citing *Funding System Leasing Corp. v. Pugh*, 530 F.2d 91, 95 (5th Cir. 1976).

Though Wells Fargo asserted many affirmative defenses in its answers to the complaint and the amended complaint, the defense of non-satisfaction of a suspensive condition or a condition precedent was not among them. Nor can any of the defenses it did urge reasonably be construed as preserving this defense. Finally, Wells Fargo's answers mentioned nothing concerning the notice and cure provision in the Myles mortgage. Thus, Wells Fargo waived the affirmative defense based on Myles's alleged failure to give it notice and an opportunity to cure.

Alternatively, even if the provisions of covenant 20 do constitute a suspensive condition, Wells Fargo waived that condition by filing a proof of claim in the Myles bankruptcy on March 2, 2007, and by moving for relief from the automatic stay on December 19, 2007.

Myles's action for breach of contract is not barred by the notice and cure provision of her mortgage.

---

[12] Wells Fargo argues that *Fuller* and *Verex Assurance* are inapplicable because they relied on Texas law regarding condition precedent. However, covenant 16 in Myles's mortgage provides that the applicable law is the law of the jurisdiction where the property is located – Louisiana – *and* federal law.

6

## 2.    11 U.S.C. §524(i)

Even though it is not a claim of the complaint, Wells Fargo argues that if the plaintiffs have a remedy for its alleged actions, it is *only* under 11 U.S.C. §524(i),[13] which states:

> The willful failure of a creditor to credit payments received under a plan confirmed under this title, unless the order confirming the plan is revoked, the plan is in default, or the creditor has not received payments required to be made under the plan in the manner required by the plan (including crediting the amounts required under the plan), shall constitute a violation of an injunction under subsection (a)(2) if the act of the creditor to collect and failure to credit payments in the manner required by the plan caused material injury to the debtor.

Section 524(i) references Bankruptcy Code section 524(a)(2),[14] which prescribes the effects of a discharge. Thus, it plainly does not apply before a debtor is discharged.[15] *See In re Nosek*, 2008 WL 4445707 at *11, n.14 (1st Cir. 2008); *In re Collins*, 2007 WL 2116416 at *4 (Bankr. E.D. Tenn. 2007). Because the plaintiffs have not yet received discharges, they are not entitled to relief under section 524(i).

However, this does not leave plaintiffs without a remedy for Wells Fargo's alleged breach of its obligations under either the mortgages or the confirmed chapter 13 plans; the plaintiffs still have contract claims for violations of their terms because the confirmed plans are binding contracts.

---

[13] Congress added section 524(i) to the Bankruptcy Code in 2005 as part of BAPCPA.

[14] Section 524(a)(2): "A discharge under this title … operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover, or offset any such debt as a personal liability of the debtor . . . ."

[15] See footnote 5, above.

7

### 3.     *Unjust Enrichment*

The plaintiffs also allege that Wells Fargo was unjustly enriched by improperly handling plaintiffs' mortgage payments. Defendant correctly contends that plaintiffs' cause of action for unjust enrichment is barred by their breach of contract claims.

Louisiana law recognizes a claim for unjust enrichment when a plaintiff establishes five elements: (1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) an absence of justification or cause for the enrichment and impoverishment; and (5) *lack of another remedy at law*. *Minyard v. Curtis Products, Inc.,* 205 So.2d 422, 432 (La. 1967) (emphasis added).

The availability of a contract claim precludes claims for unjust enrichment. *Morphy, Mahofsky & Masson, Inc. v. Canal Place 2000*, 538 So.2d 569, 572 (La. 1989). *See also Andrews v. Barham*, 975 So.2d 825, 828 (La. App. 2d Cir. 2008), citing *Dumas Associates, Inc. v. Lewis Enterprises, Inc.*, 704 So.2d 433, 437 (La. App. 2d Cir. 1997).

Faced with this, plaintiffs gamely argue that their unjust enrichment claim was merely pled in the alternative, should they not prevail on their contract claims. But the viability of a plaintiff's breach of contract claim does not govern whether that remedy precludes a claim for unjust enrichment. The mere existence of potential contract claim bars the unjust enrichment remedy. *Morphy*, 538 So.2d at 572. *See also Coastal Environmental Specialists, Inc. v. Chem-Lig International, Inc.*, 818 So.2d 12, 20 (La. App. 1st Cir. 2001) (whether the plaintiff could prevail in its contract suit was not determinative of whether unjust enrichment was available as a remedy).

The plaintiffs' unjust enrichment claims will be dismissed. *Dorsey v. Northern Life Insurance Co.*, 2005 WL 2036738 at \*22 (E.D. La. 2005) (dismissing unjust enrichment claim on motion for judgment on the pleadings).

### 4.    *Violation of Automatic Stay*

Wells Fargo next argues that its alleged misapplication of payments received from the chapter 13 trustee under the debtors' confirmed plans did not violate the automatic stay under 11 U.S.C. §362(a).[16] It maintains that the allegedly improper payment allocations and deposits were merely "bookkeeping entries" on Wells Fargo's internal records that do not implicate the automatic stay. Wells Fargo relies on *Mann v. Chase Manhattan Mortgage Corp.*, 316 F.3d 1, 3 (1st Cir. 2003), where the court held that "post-petition bookkeeping entries by Chase did not implicate Bankruptcy Code §362(a)(3)." The *Mann* court reasoned that unilaterally accruing amounts supposedly due, but not communicating these acts to the debtor, did not violate the automatic stay. *Id*.

Though the Fifth Circuit has not yet considered whether a mortgage creditor's actions after confirmation of a chapter 13 plan violate the automatic stay, two bankruptcy courts in the circuit have done so.

First, in *In re Jones*, 366 B.R. 584, 599 (Bankr. E.D. La. 2007), *aff'd,* 391 B.R. 577 (E.D. La. 2008), the court held that a creditor violates the stay when it "applies any portion of [the] Debtor's earnings to undisclosed fees and charges, rather than the installments owed under the note and payable under the plan [because] it reduces [the] Debtor's ability to pay

---

[16] The automatic stay arises when the bankruptcy petition is filed, and continues, as to acts against property of the estate, until the property is no longer property of the estate, and as to any other act, until the earlier of case closure, case dismissal or the grant or denial of discharge. 11 U.S.C. §362(c). In chapter 13 cases, the debtor's earnings are property of the bankruptcy estate. 11 U.S.C. §1306. Accordingly, in chapter 13 cases, absent any other action by the court, the automatic stay remains in effect until the debtor's discharge.

9

either the reasonable and necessary costs of his support or the amounts due under the plan." The creditor's misapplication of the plan payments therefore was a taking of estate property prohibited by §362(a)(3). *Id*.

Second, in *In re Sanchez*, 372 B.R. 289, 313 (Bankr. S.D. Tex. 2007), the mortgage creditor had assessed post-petition attorney's fees, costs and property inspection fees to the debtor's account and then applied mortgage payments it received from the trustee to those charges, all without advising the debtor. The court held that the creditor's actions amounted to taking property of the estate – the debtor's post-petition earnings – in violation of the automatic stay.

Courts from other circuits have reached the same conclusion as *Jones* and *Sanchez*. *See In re McCormack*, 203 B.R. 521, 525-26 (Bankr. D.N.H. 1996) (mortgagee sanctioned for violating automatic stay by failing to adjust computer records to reflect chapter 13 plan confirmation, thus adding improper fees and charges to debtor's account); *In re Payne*, 387 B.R. 614, 638-39 (Bankr. D. Kan. 2008) (loan servicer's application of the trustee's payments to disallowed pre-petition late fees, rather than allowed pre-petition claim, violated section 362(a)(6)).

Wells Fargo characterizes its action as merely making bookkeeping entries. However, the amended complaint alleges that Wells Fargo did more than keep incorrect records on the debtors' mortgage loans. It alleges that Wells Fargo actually billed for and collected from the debtors amounts that it was not owed as a result of its misapplication of the debtors' plan payments. The allegations state a claim for violation of the automatic stay under 11 U.S.C. §362(k).

     5.  *Private Right of Action under 11 U.S.C. §506(b)*
       *or Fed. R. Bankr. P. 2016*

  Myles and Ghoram allege that Wells Fargo charged them unreasonable attorneys' fees through misapplication of plan payments, and that its collection of the fees violated 11 U.S.C. §506(b) and Rule 2016. Wells Fargo responds that plaintiffs have no private right of action under either §506(b) or Rule 2016.

  Bankruptcy Code section 506(b) gives bankruptcy courts the power to determine the amount of a creditor's secured claim. Under section 506(b), if the value of a creditor's collateral for a claim exceeds the amount of the claim, the creditor may recover interest on the claim, plus reasonable fees, costs or other charges provided for under the agreement under which the claim arose or under a state statute.

  United States Supreme Court jurisprudence considering whether a party has a right of action under a federal statute includes *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (2001). *Cort* established a four-factor test for determining whether a statute creates a private right of action:

> (1) whether the plaintiff is a member of a class for whose benefit the statute was enacted;
>
> (2) whether there is evidence of Congressional intent to create or deny a private remedy;
>
> (3) whether a private remedy is consistent with the underlying purpose of the legislative intent; and
>
> (4) whether the cause of action is one traditionally relegated to state law.

422 U.S. at 78. After *Cort*, the Supreme Court refined its reasoning, holding that Congressional intent is the determinative factor. *Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 23-24, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979).

The Fifth Circuit has not yet decided whether a private right of action exists under section 506(b). However, several courts in the Third Circuit have considered the issue. *See Willis v. Chase Manhattan Mortgage Corp.*, 2001 WL 1079547 (E.D. Pa. 2001); *Matter of Henthorn*, 299 B.R. 351 (E.D. Pa. 2003); *Zlupko v. Washington Mutual Bank*, 2004 WL 2297400 (E.D. Pa. 2004). The *Willis* court applied *Cort* and *Touche* to section 506(b), and concluded that Congress did not intend to create a private right of action for violations of 11 U.S.C. §506(b) because neither the statutory text nor legislative history evidence Congressional intent to create a private right of action. It also noted that the statute does not proscribe creditors' actions or give rights to debtors that would make debtors a class protected by section 506(b), even though the fourth *Cort* factor (whether the cause of action is traditionally under state law) might militate in favor of a private right of action. *Willis*, 2001 WL 1079547 at *2. *Henthorn* and *Zlupko* agreed with the reasoning of the *Willis* court. *Henthorn*, 299 B.R. at 355; *Zlupko*, 2004 WL 2997400 at *3. The plaintiffs have pointed to no persuasive contrary authority.

Congress could have created a right of action to remedy creditors' actions inconsistent with section 506(b), as it did in 1984 for willful automatic stay violations. Its not doing so compels the conclusion that it did not intend to give debtors a private right of action. *See Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 509 (9th Cir. 2003) (declining to find a private right of action for discharge injunction violations, stating that "[h]ad Congress meant to create a private right of action for violations of §524, it could have easily done so [in 1984 when it added language to section 362 allowing damages for some stay

12

violations]; that it did not is a strong indication that it did not intend such a remedy.") Accordingly, the plaintiffs have no claim for damages or restitution under section 506(b).[17]

Bankruptcy Rule 2016 provides the mechanism for bankruptcy court approval of attorney compensation from the estate. However, the rule creates no substantive rights. *See Matter of Phillips*, 960 F.2d 926, 934 (5th Cir. 1992) (Bankruptcy Code defines substantive rights and the Bankruptcy Rules provide the process of effectuating those rights); 28 U.S.C. §2075 (Supreme Court has authority to promulgate bankruptcy rules but rules cannot "abridge, enlarge or modify substantive rights"). *See also In re Yancey*, 301 B.R. 861, 868 (Bankr. W.D. Tenn. 2003) (Rule 2016 does not create a private right of action).

The plaintiffs' demand for relief under Bankruptcy Rule 2016 also fails to state a claim.

### 6. *Private Right of Action under 11 U.S.C. §105(a)*

Myles and Ghoram's response to the motion for judgment on the pleadings cites 11 U.S.C. §105(a) as a basis for recovery from Wells Fargo for its alleged violations of section 506(b), although plaintiffs' amended complaint does not specifically cite the statute as a basis for relief. Section 105(a) does not support that relief.

Bankruptcy Code section 105(a) empowers courts to issue any orders or judgments necessary or appropriate to carry out other provisions of the Bankruptcy Code. However, section 105 does not leave courts to refashion the Bankruptcy Code in the name of equity – they must use section 105's power in a way consistent with the Code. *See Raleigh v. Illinois Department of Revenue*, 530 U.S. 15, 25, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000); *Matter of Oxford Management*, 4 F.3d 1329, 1334 (5th Cir. 1993).

---

[17] The plaintiffs' claims under section 506(b) also fail because that section governs residential mortgage claims only from the filing of the petition through confirmation. It does not apply after confirmation. *See In Re Padilla*, 379 B.R. 643, 657 (Bankr. S.D. Tex. 2007).

Section 105(a) specifically does not empower courts to create a private right of action derivatively when another Bankruptcy Code provision does not provide for substantive relief. The Third Circuit already has held that section 105(a) cannot be used to imply a private remedy under 11 U.S.C. §506(b) for a debtor harmed by a mortgagee's allegedly improper fee charges. *In re Joubert*, 411 F.3d 452, 455 (3d Cir. 2005). Other courts have rejected the use of section 105 to imply private rights of action where Congress did not provide for them. *See Pertuso v. Ford Motor Credit*, 233 F.3d 417, 422-23 (6th Cir. 2000) (no private right of action can be implied either directly or through §105(a) for alleged violations of 11 U.S.C. §524 discharge injunction); *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d at 509 n. 3 ("[i]f Congress had understood §105 as permitting a private cause of action [for violating §524 discharge injunction], the 1984 amendment creating one for violations of §362 would have been superfluous").

Plaintiffs have not pointed to any appellate court support for the proposition that Congress intended that bankruptcy courts use section 105(a) to "create" private rights of action that it did not include in other sections of the Bankruptcy Code. They cite *Tate v. NationsBanc*, 253 B.R. 653, 668 (Bankr. W.D.N.C. 2000), in which the court ruled that section 506(b) "created rights and duties for creditors in bankruptcy cases." *Id.* A bankruptcy court does indeed have the authority under 11 U.S.C. §105 to order creditors to disgorge moneys improperly obtained from debtors. However, that is not the same as recognizing a debtor's private right of action for damages under a specific Bankruptcy Code section.[18]

---

[18] *In re Sanchez*, 372 B.R. at 311-12 cited *Tate*, but reasoned that the court need not hold that debtors have a private right of action to recover fees improperly charged by creditors because it can use the contempt power of section 105(a) to rectify overcharges (quoting *Tate*, 253 B.R. at 668). *See also Cox v. Zale Delaware, Inc.*, 239

14

The plaintiffs have no private right of action under section 105(a).

### 7. *Private Right of Action under 11 U.S.C. §1322 or §1327*

Last, the plaintiffs seek damages under 11 U.S.C. §§1322 and 1327 for Wells Fargo's alleged breaches of the debtors' chapter 13 plans. Wells Fargo urges that the amended complaint does not state a claim under these Bankruptcy Code sections because they create no private right of action.

Bankruptcy Code section 1322 sets forth what a chapter 13 plan may and may not include, such as provisions for curing defaults (§1322(b)(5)) and the modification of the mortgage on a debtor's principal residence (§1322(c)(2)). Section 1327(a) provides that a confirmed chapter 13 plan binds the debtor and all creditors, and under section 1327(b), confirmation of a plan vests all property of the estate in the debtor.

Nothing in either section 1322 or section 1327 explicitly creates a private right of action for alleged violations of these sections. Moreover, many courts, following *Cort* and later Supreme Court decisions including *Transamerica*, have concluded that there is no evidence that Congress intended to create a private right of action in §1322 or §1327. *See Matthews v. Washington Mutual Bank, F.A.*, 2006 WL 2380460 at *7 (E.D. Pa. 2006) (§1322 does not create an *implied* private right of action); *Smith v. Keycorp Mortgage, Inc.*, 151 B.R. 870, 875-76 (N.D. Ill. 1993) (same). *See also Williams v. Chase Manhattan Mortgage Corp.*, 2005 WL 2544585 at *9 (W.D.N.C. 2005), citing *Petruso v. Ford Motor Credit Corp.*, 233 F.3d 417, 423 (6th Cir. 2000) (no private right of action under §1327); *Guetling v. Household Financial Services, Inc.*, 312 B.R. 699, 703-4 (M.D. Fla. 2004) (same); *In re Sims*, 278 B.R. 457, 473 (Bankr. E.D. Tenn. 2002) (same).

---

F.3d 910, 917 (7th Cir. 2001) (sole remedy of debtor that made payments on allegedly invalid reaffirmation agreement was through civil contempt proceeding in court that granted debtor's discharge).

Neither §1322 nor §1327 creates a private right of action.  Plaintiffs' amended complaint fails to state a claim for damages or restitution under those Bankruptcy Code sections.

## Conclusion

The court will dismiss the claims of the plaintiffs' amended complaint for unjust enrichment and for damages or restitution under 11 U.S.C. §§105, 506(b), 1322 and 1327, and also under Bankruptcy Rule 2016.  Wells Fargo's motion for judgment on the pleadings is denied in all other respects.

Baton Rouge, Louisiana, October 15, 2008.

**s/ Douglas D. Dodd**
DOUGLAS D. DODD
UNITED STATES BANKRUPTCY JUDGE